**Alfred DORSE and Josephine Dorse, Plaintiffs–Appellees,**

v.

**EAGLE–PICHER INDUSTRIES, INC., Defendant–Appellant,**

**Armstrong World Industries, Inc., et al., Defendants.**

No. 89–5648.

United States Court of Appeals, Eleventh Circuit.

April 25, 1990.

Joe Hollingsworth, Washington, D.C., Susan J. Cole, Coral Gables, Fla., for defendant-appellant.

Louis Robles, Miami, Fla., Charles S. Siegel, Dallas, Tex., for plaintiffs-appellees.

Before FAY and COX, Circuit Judges, TUTTLE, Senior Circuit Judge.

PER CURIAM:

The judgment is AFFIRMED based upon the Order Granting Plaintiff's Motion for Summary Judgment on Government Contractor Defense appended hereto [order reported at 716 F.Supp. 589].

---

Josephine Dorse, et al., Plaintiffs,

v.

Armstrong World Industries, Inc., et al., Defendants.

No. 82–2308–CIV–KING

United States District Court Southern District of Florida

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON GOVERNMENT CONTRACTOR DEFENSE

The plaintiff has filed a motion for summary judgment on the government contractor defense in this asbestos case for the wrongful death of her husband. In 1984, the defendant originally moved for summary judgment on the government contractor defense. The court denied this motion and later granted the plaintiff's motion to strike the defense. The court based this decision on the conclusion that Florida law did not recognize such a defense. Subsequently, the parties stipulated and the court entered judgment for plaintiff in the amount of $250,000.00. The defendant, however, expressly reserved the right to challenge on appeal the striking of the government contractor defense.

On appeal, the Eleventh Circuit concluded that it had jurisdiction to hear the appeal, but certified to the Florida Supreme Court the question of whether Florida recognized the defense. *Dorse v. Armstrong World Industries*, 798 F.2d 1372 (11th Cir. 1986). The Florida Supreme Court ruled that Florida law may recognize such a defense in limited circumstances. *Dorse v. Armstrong World Industries*, 513 So.2d 1265 (Fla.1987). The Florida court's decision prompted the Eleventh Circuit to vacate this court's earlier ruling and remanded the case for further consideration of the issue presented. *Dorse v. Armstrong World Industries*, 837 F.2d 957 (11th Cir. 1988). Following these decisions, the United States Supreme Court clarified the contours of the government contractor defense.

I.

In *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), the Supreme Court addressed the issue of "when a contractor providing military equipment to the Federal Government can be held liable under state tort law for injury caused by a design defect." *Boyle*, 108 S.Ct. at 2513. The Court recognized two necessary conditions for the displacement of state law. The predicate for preemption is that the case must concern an area of uniquely federal interest, such as procurement of equipment by the United States. After this inquiry has been satisfactorily addressed, displacement will occur only where "a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law,' or the application of state law would 'frustrate specific objectives' of federal legislation". *Boyle*, 108 S.Ct. at 2515 (citations omitted). The Supreme Court found that the facts in *Boyle* presented a case involving an area of uniquely federal interest in which a significant conflict existed between federal policy and state law.

Lieutenant Boyle, a United States Marine helicopter pilot, was killed when his helicopter crashed off the coast of Virginia during a training exercise. Although he survived the impact of the crash, Lieutenant Boyle drowned. He was unable to exit through the escape hatch because water pressure prevented it from being opened. The helicopter had been designed by a private contractor pursuant to government contract specifications. The government contract specified an escape hatch that swung outward. The complaint alleged that the escape hatch was defectively designed and should have opened inward.

After deciding procurement of military equipment is an area of uniquely federal interest, the Court concluded that the state-imposed duty of care that was the asserted basis of the contractor's liability was "precisely contrary" to the duty imposed by the government contract. *Boyle*, 108 S.Ct. at 2516. The Court cautioned, however, that even in clear situations in conflict, a "significant interest" of federal policy must

also exist to justify replacement of state law. *Id.* To determine the scope of displacement, the Court adopted the test set out in *McKay v. Rockwell International Corp.*, 704 F.2d 444 (9th Cir.1983) *cert. denied* 464 U.S. 1043, 104 S.Ct. 711, 79 L.Ed.2d 175 (1984). The Court concluded that liability for *design defects* in military equipment cannot be imposed, pursuant to state law, when

1. the United States approved reasonably precise specifications;
2. the equipment conformed to those specifications; and
3. the supplier warned the United States about the dangers in the use of equipment that were known to the supplier but not to the United States.

*Boyle,* 108 S.Ct. at 2518.

## II.

The parties disagree whether *Boyle* applies to a "failure to warn" case such as the instant asbestos case. The plaintiff submits that the *McKay* test and the *Boyle* decision are clearly limited to design defect cases. The defendant, however, contends that the decisions apply to all types of product liability cases.

The court partially agrees with both parties. On the one hand, the court agrees with the defendant that *Boyle* is not strictly limited to design defect cases. The government contractor defense, for example, could arise when the government prohibits a specific warning. On the other hand, the court agrees with the plaintiff that the three-part test of *McKay* is necessarily limited to design defect cases. The *Boyle* decision, however, is not rendered completely meaningless in "failure to warn" cases.

To resolve the dilemma of applying *Boyle* to a "failure to warn" case, *Boyle*'s two-pronged analysis guides the court. The first prong, that the case concern an area of uniquely federal interest, is similarly satisfied in this failure to warn case. As in *Boyle*'s design defect case, the procurement of asbestos in World War II for naval ships is undeniably an area of uniquely federal interest.

Having satisfied this threshold requirement, the court must address the more difficult question of whether a significant conflict exists between an identifiable federal policy and the operation of state law. The Court in *Boyle* faced a situation where the duty under the government contract required an escape-hatch mechanism opening outward. The "precisely contrary" duty, an inward-opening hatch, existed under the state-imposed duty of care that was the asserted basis of the contractor's liability. The contractor could not possibly comply with both its contractual obligations and the state-prescribed duty of care, so state law was necessarily displaced.

The present case, however, presents an entirely different situation. Specifically, the state-imposed duty of care that is the asserted basis of the contractor's liability (warning of the danger) is not "precisely contrary" to the duty imposed by the government contract (the duty of manufacture and deliver cement containing asbestos). In fact, the evidence suggests that *no* conflict exists between the state tort duty and the federal contractual duty. The defendant's exhibit of Navy Department specifications does not contain any prohibition against health warnings on the product.[1] Moreover, the deposition of Eagle-Picher's Director of Claims indicates that the defendant could have complied with

---

1. The relevant part of the specifications is Section G, entitled "Packaging, Packing and Marking for Shipment." This section provides:

    G-1 *Packaging*—Unless otherwise specified, commercial packages are acceptable under this specification

    G-2 *Packing*—Unless otherwise specified, the subject commodity shall be delivered in standard commercial containers of the size commonly used, so constructed as to insure acceptance by common or other carrier for safe transportation at the lowest rate, to the point of delivery.

    G-3 *Marking*

    G-3a. *Individual pieces*—Each layer of Type A covering shall be marked, labelled, or tagged to show pipe size for which intended.

    G-3b. *Shipping Containers*—Unless otherwise specified, shipping containers shall be marked with the name of the material, the type, pipe size, and the quantity contained therein, as defined by the contract or order under which shipment is made, the name of

both its state tort law duty and its Navy contract. The Director's testimony provides in pertinent part:

Q: And so there is nothing in those specifications that prohibits such a [health] warning; is that correct?

A: That is correct.[2]

The evidence in the case does not support the requirements for the government contractor defense. "The contractor could comply with both its contractual obligations and the state-prescribed duty of care." *Boyle,* 108 S.Ct. at 2516. State law cannot be displaced in this context. Accordingly, the court

ORDERS and ADJUDGES that the plaintiff's motion for summary judgment on the government contractor defense is GRANTED.

DONE and ORDERED.

s/ <u>James Lawrence King</u>
James Lawrence King
Chief U.S. District Judge
Southern District of Florida

the contractor, and the number of the contract or order.

**2.** The full text of this testimony is as follows:

Q. Right. Now, looking at Plaintiff's Exhibit 7, "Bureau of Ships Ad Interim Specification," page 5, Section G, "Packaging, Packing, and Marking for Shipment," what in that specification tells you or told Eagle–Picher, Do not put a warning of potential health effects of asbestos on your packaging of asbestos-containing insulation products, if anything?

A. It doesn't address that issue at all.

Q. And so there is nothing in those specifications that prohibits such a warning; is that correct?

A. That is correct.

Q. There is nothing in that specification which affects in any way the wording of such a warning; is that correct?

A. No, it's governed by—by G–1, "Unless otherwise specified, commercial packages are acceptable."

Q. Okay. So there's nothing in your contract with the Government or in the specifications made a part of that—made a part of those contracts that precluded Eagle–Picher from placing a waning of health effects on

packages of asbestos-containing insulation products sold to the Navy; is that correct?

A. Not at that time frame.

Q. By that time frame, we are talking—you are speaking of at least up through 1945?

A. Or whatever period of time the exhibits covered.

Q. Okay. And that would be true of all shipments to the Navy other than shipments sold to the Government beginning in the 1950s governed by separate specifications known as military specifications primarily for use overseas and shipment on board ship?

Q. Just a second, and we can probably finish here.

You don't know—well, to your knowledge, is there any documentation or correspondence between the Government and Eagle–Picher at any time from 1931 to the present concerning the provision by Eagle–Picher of warnings concerning the health effects of asbestos on packages sold to the Government?

A. Based on a thorough research of all of our records, we found nothing to that effect.

Deposition, Robert L. Bockstahler, pp. 61–63