David A. MARLEY, et al., Plaintiffs,

v.

ELLIOT TURBOMACHINERY CO., INC., et al., Defendants.

No. 07–23042–CIV.

United States District Court, S.D. Florida, Miami Division.

March 13, 2008.

---

Case A. Dam, David Aaron Jagolinzer, Ferraro Law Firm, Miami, FL, for Plaintiffs.

Edward Joy Briscoe, Helaine S. Goodner, Fowler White Burnett, Rebecca Carrie Kibbe, Kirkpatrick & Lockhart Preston Gates Ellis LLP, M. Stephen Smith, III, Rumberger Kirk & Caldwell, Frank Joseph Sioli, Jr., Brown Sims, P.C., Lori Anne M. Rovner, Virginia Easley Johnson, Foley & Mansfield, P.L.L.P., Sergio Edward Pagliery, Shook Hardy & Bacon, Miami, FL, Abigail Morrison Cohen, Conroy Simberg Ganon Krevans & Abel, Hollywood, FL, Timothy Clark, Timothy Clark, Plantation, FL, Kathleen Margaret Labarge, Bice Cole Law Firm, Steven A. Edelstein, The Biltmore Hotel, Coral Gables, FL, Evelyn Fletcher, Frances Spinthourakis, Hawkins & Parnell, Atlanta, GA, David M. Hawthorne, Hugh J. Turner, Jr., Akerman Senterfitt & Eidson, Fort Lauderdale, FL, Henry Salas, Cole, Scott, & Kissane P.A., South Miami, FL, for Defendants.

## AMENDED ORDER DENYING MOTION TO REMAND

ADALBERTO JORDAN, District Judge.

Elliott Turbomachinery and Viad removed this action to federal court pursuant to 28 U.S.C. § 1442(a)(1). Pending is the plaintiffs' motion to remand, arguing that the defendants had not sufficiently shown a federal colorable defense and a nexus between this action and their official duties. For the reasons stated below, the motion to remand [D.E. 2] is DENIED.

### I. FACTUAL BACKGROUND

This action is in essence a dispute about the defendants' ability, under their contract with the Navy, to warn Mr. Marley that unprotected asbestos exposure could cause mesothelioma and other ailments. The defendants were retained by the Navy in the 1940s to manufacture numerous ship parts and devices for the *U.S.S. Lake Champlain.* The manufactured products contained asbestos but did not have any type of warning about the dangers of unprotected asbestos exposure.

Mr. Marley was a Navy sailor assigned to the *Lake Champlain* from 1959–1983. During his assignment, he was allegedly exposed to the asbestos contained in the defendants' products. As a result of this exposure, he allegedly developed mesothelioma. This suit is brought by Mr. Marley and his wife.

Elliot and Viad removed this action under § 1442(a)(1), invoking federal officer jurisdiction. In support of removal, Elliot filed the affidavits of retired Admiral Ben J. Lehman and retired Admiral Roger B. Horne.[1]

### A. ADMIRAL LEHMAN

Admiral Lehman joined the United States Navy in 1942 and remained on active duty until 1946. He served as ship superintendent and dry docking officer at the Brooklyn Navy Yard between 1942 and 1944. In 1950, he was assigned as a ship superintendent at the San Francisco Naval

---

1. Viad joined Elliot's removal filings.

Shipyard. During his Naval service, he was personally responsible for the creation of Navy specifications for the procurement of materials and machinery used on Navy vessels. He is familiar with Navy specifications, equipment manuals, and qualified product lists, which are used in the construction and repair of Navy and commercial ships. *See* Lehman Aff. at ¶¶ 1–2.

Admiral Lehman states that in the 1940s and 1950s, "the Navy had complete control over every aspect of each piece of equipment. Military specifications governed every characteristic of the equipment used on Navy ships, including the instructions and warnings ... Thus the Navy controlled the decision making with respect to instructions and warnings on every piece of equipment." *See id.* at ¶ 7. Admiral Lehman further states that the "Navy had specifications as to the nature and content of all written material that was delivered with each piece of equipment ... The Navy determined the nature of hazards to be subject to any precautionary handling and the content of any such labeling." *See id.* at ¶ 8.

Admiral Lehman's conclusion is (1) that manufacturers and suppliers were prohibited from providing any warning without the consent of the Navy, and (2) that "certain types of warnings would not have been approved by the Navy given the necessary performance needs and capabilities of the shipboard equipment, the ships, and Navy personnel. This would have included, but not been limited to, any potential warnings associated with asbestos including, but not limited to, recommendations regarding respiratory protection and repair and maintenance practices." *See id.* at ¶ 10. According to Admiral Lehman, prior to the mid 1960s, the Nevy relied on its own occupational health program to provide training and prevent the hazards of asbestos to shipyard workers. *See id.* at ¶¶ 11, 13(c).

### B. Admiral Horne

Admiral Horne is a retired rear admiral of the United States Navy. He began his career in 1956. Throughout his Navy career, he concentrated in the areas of ship design, engineering, construction, overhaul, and inspection. He achieved the rank of chief engineer and deputy commander at the Naval Sea Systems Command for Ship Design and Engineering. *See* Horne Aff. at ¶ 2.

According to Admiral Horne, it was common for the Navy to send inspectors to the plants of manufacturers to assure conformance with the Navy specifications and requirements. *See id.* at ¶ 7. He also states that the Navy specifications covered the nature of any communication affixed to products supplied to the Navy by third parties. "Vendors such as Defendants would not have been permitted (either under the specifications or, as a matter of Navy practice) to attach any type of warning or cautionary statement not required and approved by the Navy, including any statements related to asbestos, without prior discussion, approval and acceptance by the Navy." *Id.* at ¶ 12.

Admiral Horne concludes that any warning affixed by a vendor "would have been rejected as contrary to the Navy protocols for instruction and training relating to use of asbestos materials." *See id.* "The Navy determined to address the potential hazards of asbestos on Navy ships through training and not through warnings." *See id.* at ¶ 14.

### II. Analysis

I conclude that removal of this action was appropriate under the federal officer removal statute.

■ A state-court action against any person acting under the direction of an

officer of the United States or its agencies can be removed to federal court pursuant to § 1442(a)(1). The purpose of § 1442(a)(1) is to permit the removal of "those actions commenced in state court that expose a federal official to potential civil liability or criminal penalty for an act performed ... under color of office." *See Magnin v. Teledyne Cont'l Motors,* 91 F.3d 1424, 1427 (11th Cir.1996)(internal citations omitted). The statute reflects Congress' intent "to provide a federal forum for cases where federal officials must raise defenses arising from their official duties." *See id.* As such, § 1442(a)(1) is an exception to the well-pleaded complaint rule, which generally precludes removal where a federal question is not apparent within the four corners of the complaint. *See Mesa v. California,* 489 U.S. 121, 136–37, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989).

■ Removal under § 1442(a)(1) generally depends on the satisfaction of two separate requirements. First, the defendant must *"advance* a 'colorable defense arising out of [his] duty to enforce federal law.' " *See Magnin,* 91 F.3d at 1427 (internal citations omitted, emphasis added). Second, the defendant must establish that the suit is for acts performed "under the color of office." This requirement is satisfied by showing " 'a causal connection' between what the officer has done under asserted official authority and the action against the defendants." *See id. See also Jefferson Co. v. Acker,* 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999)(internal citations omitted). I find that the defendants have made a sufficient showing on both requirements.

## A. A Colorable Defense

■ The defendants have advanced a colorable federal defense to the plaintiffs' claims. A colorable defense is a defense that is "plausible." *See Magnin,* 91 F.3d

at 1427 (*citing Mesa,* 489 U.S. at 129, 109 S.Ct. 959). In construing the colorable federal defense requirement, the Supreme Court has rejected "a narrow grudging interpretation" of the term, "recognizing that 'one of the most important reasons for removal is to have the validity' of the defense of official immunity tried in a federal court." *See Jefferson,* 527 U.S. at 432, 119 S.Ct. 2069 (internal citations omitted). *See also Willingham v. Morgan,* 395 U.S. 402, 407, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969) (We ... do not require the officer virtually to "win his case before he can have it removed.") Thus, a defense may be colorable even if the court ultimately rejects it. Indeed, no determination of fact is required at the removal stage. All a removing defendant needs to do is to make a showing that his federal defense "is not without foundation and made in good faith." *See Nesbiet v. Gen. Electric,* 399 F.Supp.2d 205, 211 n. 44 (S.D.N.Y. 2005) (internal citations omitted).

With this standard in mind, I turn to the federal defense advanced in this case. The defendants have raised a federal contractor defense to the plaintiffs' failure to warn claims. *See* Not. of Removal [D.E. 1] at ¶ 9. The defendants contend that their "alleged failure to warn of the hazards of asbestos resulted from the Navy's prohibition of such warnings." *See id.* at 10.

The Supreme Court recognized the federal contractor defense in *Boyle v. United Tech., Corp.,* 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). *Boyle* involved the crash of a United States Marine helicopter in a training exercise off the Virginia coast. The pilot survived the accident impact, but he could not open the helicopter's outward escape hatch and drowned. The pilot's estate sued the manufacturer of the helicopter, alleging that the escape hatch should have been designed to open inward to facilitate escape. The manufac-

turer's defense was that it had designed the helicopter pursuant to government specifications requiring an escape hatch that swung outward. On these facts, the Court held that liability for design defects in military equipment could not be imposed under state law when (1) the government approved reasonably precise specifications, (2) the equipment conformed to those specifications, and (3) the supplier warned the United States about dangers known to the supplier but not known to the United States. *See* 487 U.S. at 512, 108 S.Ct. 2510.

The Eleventh Circuit extended the holding of *Boyle* to failure to warn claims in *Dorse v. Eagle–Picher Indus., Inc.*, 898 F.2d 1487, 1489 (11th Cir.1990).[2] Like this case, *Dorse* involved a claim that a manufacturer had failed to warn about the hazards of asbestos. The court noted that the federal contractor defense bars liability when (1) the case concerns an area of uniquely federal interest and (2) there is "a significant conflict" between an identifiable federal policy or requirement and a state law duty. The defense fails as a matter of law, however, if the contractor can "comply with both its contractual obligations and the state-prescribed duty of care." *See id.* at 1489 (internal citation omitted).[3]

The parties do not dispute that the procurement of Navy vessels (and parts for those vessels) is an area of uniquely federal interest. *See Boyle*, 487 U.S. at 504–505, 108 S.Ct. 2510 (civil liability arising from performance of procurement contracts with government is an area of

"uniquely federal interest"); *Dorse*, 898 F.2d at 1489 ("procurement of asbestos in World War II for naval ships is undeniably an area of uniquely federal interest"). The dispute in this case is whether the defendants have shown a "good faith foundation" to argue that there was a conflict between their contractual obligations with the Navy and the state law duty to warn.

 To satisfy their burden, the defendants have filed the affidavits of Admiral Lehman and Admiral Horne. According to Admiral Lehman, in the 1940s and the 1950s the Navy dictated every aspect of the warnings associated with its ships and did not permit deviation by any of its contractors. He concludes that the Navy would have rejected any asbestos warning suggested by the defendants as contrary to their policy to deal with the asbestos problem through training and not through warning. *See* Lehman Aff. at ¶ 10. Admiral Horne concurs with Admiral Lehman and states that "any request to include a warning regarding asbestos in an equipment manual would have been rejected as contrary to Navy protocols for instruction and training relating to use of asbestos materials." *See* Horne Aff. at ¶ 15.

The affidavits of Admiral Lehman and Admiral Horne are not unique to this case. Almost identical affidavits have been filed by the defendants in lawsuits all over the country. District courts, however, are split on whether these are sufficient to "advance" a colorable government contractor defense.

In *Nesbiet*, for example, the court concluded that the affidavits were sufficient to

---

**2.** The *Dorse* panel adopted the reasoning of the district court's order granting summary judgment in favor of the plaintiff on the defendant's government contractor defense.

**3.** The Eleventh Circuit ultimately concluded that the defendant had failed to produce sufficient evidence indicating that his contractual

obligations prevented compliance with the state law duty to warn and entered summary judgment in favor of the plaintiff. *See* 898 F.2d at 1489. The summary judgment standard is obviously significantly higher than the colorable defense standard.

satisfy the removing defendant's burden. The court emphasized that at this stage of the proceedings the defendant had to "demonstrate merely that its claim to the military contractor defense is 'colorable.'" *See* 399 F.Supp.2d at 212. Similarly, in *Harris v. Rapid American Corp.*, the court recently held that the affidavits, albeit general in nature, were sufficient to support removal. *See* 532 F.Supp.2d 1001 (N.D.Ill.2007). *See also Contois v. Able Indus., Inc.*, 523 F.Supp.2d 155, 160 (D.Conn.2007); *Ballenger v. Agco Corp.*, 2007 WL 1813821 (N.D.Cal. June 22, 2007).

On the other hand, several courts have held that these type of affidavits are too general and vague to satisfy the removal burden of proof. *See e.g., Hilbert v. McDonnell Douglas Corp.*, 529 F.Supp.2d 187 (D.Mass.2008); *Westmiller v. Imo Indus., Inc.*, 2005 WL 2850334, *2 (W.D.Wash. Oct.20, 2005); *Schilz v. A.P. Green Indus., Inc.*, 2002 WL 102608, *1 (N.D.Cal. Jan.15, 2002).

After reviewing these cases, I conclude that the affidavits of Admirals Lehman and Horne are sufficient to "advance" a colorable federal contractor defense. Without a doubt, the affidavits are lacking on specificity and leave a lot of room for speculation. But at this stage, they do provide a good faith foundation to show (1) that the Navy controlled the warnings to be affixed on parts manufactured by independent contractors, and(2) that the Navy was likely to reject any asbestos warning given its policy to deal with the asbestos problem exclusively through training.

I agree that the Admirals' depositions in other cases suggest that they do not know of any instance when the Navy prohibited a warning proposed by a manufacturer or supplier. I also understand that there is a dispute as to whether the Navy manuals encouraged or prohibited the use of warnings. These arguments undermine the credibility of the Admirals, and raise a number of questions that the defendants will have to answer to ultimately prevail on their defense. But that is a merits question for another day. I do not need to determine credibility or likelihood of success at the removal stage. Factual disputes about the Admirals' testimony should be resolved in federal court as long as the defendants have a good faith foundation for their contractor defense. *See Magnin*, 91 F.3d at 1427–28. Because I find that the defendants have satisfied this low standard, removal was proper.

## B. CAUSAL NEXUS AND "ACTING UNDER" REQUIREMENTS

Although some courts treat the causal nexus and "acting under" requirements separately, both issues tend to "collapse into a single requirement: that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct order or to comprehensive detailed regulations." *See In re Methyl Tertiary Butyl Ether Prod.*, 488 F.3d 112, 125 (2d Cir.2007). *See also Magnin*, 91 F.3d at 1429 (analyzing both requirements together). In other words, the defendants need to show that "his relationship to the plaintiff 'derived solely from his official duties.'" *See Magnin*, 91 F.3d at 1427–28 (*citing Willingham*, 395 U.S. at 406, 89 S.Ct. 1813).

It is undisputed at this stage that the defendants manufactured and supplied the asbestos-containing products in the course of their contractual relationship with the Navy. Admiral Lehman's affidavit sufficiently establishes that the defendants were acting under federal authority when they supplied the asbestos-containing parts without warnings. Admiral Lehman generally states that the Navy has control over "what warnings should or should not be included." *See* Lehman Aff. at ¶ 7. He

further states that "the Navy controlled the decision making with respect to instructions and warnings on every piece of equipment." *See id.* Therefore, there is no question that the defendants' relationship with the plaintiff derived solely from the defendants' official duties. This is sufficient to establish a causal nexus under *Magnin. See* 91 F.3d at 1429

The plaintiffs suggest that the defendants need to show that the Navy actually prohibited asbestos warnings to establish a "causal nexus" at the removal stage. I disagree. "Just as requiring a 'clearly sustainable defense' rather than a colorable defense would defeat the purpose of the removal statute ... so would demanding an airtight case on the merits in order to show the required causal connection." *Jefferson County,* 527 U.S. at 432–33, 119 S.Ct. 2069. All a defendant needs to do to show a causal nexus is to establish that the plaintiff's claims arise from the defendants' performance of their duties under their contract with the Navy. *See Magnin,* 91 F.3d at 1427–28. This the defendants have done.[4]

## C. Disclaimer

Finally, I reject the plaintiffs' argument that the disclaimer of any claim arising from an act or omission compelled by the Navy warrants remand. In their complaint, the plaintiffs allege that:

> Every claim arising under the Constitution, treaties, or laws of the United States is expressly disclaimed (including any claim arising from an act or omission on a federal enclave, or any federal office of the U.S. or agency or person acting under him occurring under color of such office.)

Compl. at ¶ 5.

This disclaimer is circular. Its applicability depends on a determination of the core question in this case: whether the defendants's purported omission—the failure to warn—was required or caused by their contractual relationship with the Navy. If the failure to warn was required by the Navy, the disclaimer applies and the plaintiffs' claims fail as a matter of law. If the failure to warn was not required by the Navy, then the disclaimer does not apply. The problem with this argument is that the defendants have the right to have this question decided in federal court. *See Jefferson,* 527 U.S. at 432, 119 S.Ct. 2069 (defendants have a right to have "the validity' of the defense of official immunity tried in a federal court").

I understand that a number of courts have found that federal liability disclaimers defeat removal under § 1442(a)(1). *See e.g., Westbrook v. Asbestos Defendants,* 2001 WL 902642, *3 (N.D.Cal. July 31, 2001). The disclaimers in those cases, however, waived any liability arising out of work done on federal premises, irrespective of whether the work was done under the requirements of a federal agency or not. In contrast, the disclaimer here is more limited and is contingent on the Navy's contractual limitations and specifi-

---

**4.** The recent Supreme Court decision in *Watson v. Philip Morris Companies,* —— U.S. ——, 127 S.Ct. 2301, 168 L.Ed.2d 42 (2007) is not helpful to the plaintiffs' position. *Watson* stands for the proposition that "a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone." *See* 127 S.Ct. at 2308. As the Court explained the term "acting under" requires "an effort to assist, or to help carry out the duties or tasks of the federal superior." *See id.* at 2307. Here, plaintiffs' own complaint indicate that the defendants were hired by the Navy to manufacture the ship parts and devices that the Navy ultimately installed in the *Lake Champlain. See* Compl. Exposure Sheets. This is sufficient to show that the defendants helped carry out the Navy's duties or tasks.

cations. I am reluctant to find that the plaintiffs can defeat a government contractor's right to remove by disclaiming any claim arising from any act or omission compelled by a government agency. Such a circular disclaimer would defeat the purpose § 1442(a)(1) as it would force federal contractors to prove in state court that they were acting under the direction of the government.

### III. CONCLUSION

In sum, while Admiral Lehman's and Admiral Horne's affidavits fall far short from establishing that the defendants were not able to warn Mr. Marley about the danger of unprotected asbestos exposure, they are sufficient to "advance" a colorable government contractor defense and establish a nexus between this action and the defendants' official duties. Removal was appropriate. Accordingly, the plaintiffs' motion to remand is denied.

Unless this case is transferred to the Multi–District Litigation Panel before then, the parties shall file the joint scheduling report required by Local Rule 16.1(B)(2) by March 21, 2008.

DONE and ORDERED.