Stacy **STRICKLAND**, Plaintiff,

v.

**ROYAL LUBRICANT COMPANY, INC.**, Defendant.

Civil Action No. 94–D–1567–S.

United States District Court,
M.D. Alabama,
Southern Division.

Oct. 19, 1995.

---

4. Defendant TCA did not respond in any manner to the Plaintiff's Motion for Summary Judgment    on this issue.

Kevin J. Hawkins, W. Lee Gresham, III, Birmingham, AL, for plaintiff.

Jere F. White, Jr., Sarah B. Jackson, Birmingham, AL, Steven S. Bell, Kara M. Sacilotto, Perkins Coie, Seattle, WA, for defendant The Boeing Company.

George M. Walker, Hand Arendall, L.L.C., Mobile, AL, for defendant Royal Lubricant Co., Inc.

## *MEMORANDUM OPINION AND ORDER*

DE MENT, District Judge.

Before the court is defendant Royal Lubricant Co., Inc.'s ("defendant") motion for summary judgment filed April 21, 1995, to which plaintiff Stacy Strickland ("plaintiff") responded on May 9, 1995. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that the defendant's motion for summary judgment is due to be denied in part and granted in part. The court is further of the opinion that the issues presented are not so novel or complex so as to necessitate oral argument; thus, the court makes its ruling based solely on the pleadings.

Also pending before the court are the defendant's motions and supplemental motions to strike certain portions of the plaintiff's affidavit and the affidavits of the following proposed expert witnesses: Jerry L. Purswell, Ph.D.; George Edward Clarke, Ph.D.; and James Luther Booker, Ph.D.[1] The plaintiff submitted these affidavits in opposition to the defendant's motion for summary

judgment. Because the court has not considered the affidavits of the plaintiff, George Edward Clarke, Ph.D., and James Luther Booker, Ph.D., in ruling on the motion for summary judgment, the court finds that said motions are due to be denied as moot. Finally, the defendant's motion to strike the affidavit of Jerry L. Purswell is due to be denied.

## JURISDICTION AND VENUE

Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331, because the plaintiff alleges a civil action to recover damages for injuries sustained in a place subject to the exclusive jurisdiction of the United States and within the exterior boundaries of a state. *See Parker v. Main,* 804 F.Supp. 284 (M.D.Ala.1992) (Thompson, J.); 16 U.S.C. § 457. Also, 28 U.S.C. § 1332 grants the court subject matter jurisdiction, because the action is between citizens of different states and the amount in controversy exceeds $50,-000, exclusive of interest and costs. Personal jurisdiction and venue are uncontested.

## FINDING OF FACTS

This products liability action arises from injuries sustained by the plaintiff when he was sprayed in the face with a hydraulic fluid allegedly manufactured by the defendant. The plaintiff seeks recovery under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") for negligent and wanton design and manufacture. Also alleged are claims for negligent and wanton failure to warn, breach of express and implied warranties, and breach of contract.

In December 1992, the plaintiff was employed by DynCorp as an aircraft mechanic and flight test crew chief. Dyncorp had contracted with the United States to maintain various aircraft at Fort Rucker, Alabama. On December 29, 1992 and while acting within the line and scope of his employment, the plaintiff was conducting a

---

1. At the pretrial hearing, the court allowed the plaintiff to submit supplemental affidavits of his experts. Having carefully reviewed these affidavits and the defendant's objections thereto, the court finds that it possesses all the information and facts necessary to rule on the appropriate issues contained in the motions to strike. Accordingly, the court finds that a specially-set pretrial hearing under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), is unnecessary for an evaluation of the proffered expert testimony.

maintenance operation check on the cargo hooks of a CH 47 Chinook helicopter. He was lying on his stomach on a pad, beneath the helicopter, communicating with a civilian pilot in the cockpit by means of a helmet-installed interphone. The plaintiff instructed the pilot to open the center hook beneath the helicopter so that the plaintiff could perform the routine check. According to the plaintiff, when the pilot opened the center hook, a mist of hydraulic fluid sprayed him in his face for "less than five seconds." Pl.'s Dep. at 51, 52. The plaintiff inhaled and swallowed some of the mist and shortly thereafter became dizzy and nauseated. The plaintiff was treated at the Base Emergency Room that night. The plaintiff seeks damages for, among other things, "severe injury to his lungs and bronchial passages," neurological injuries, physical pain and suffering, lost wages, and "loss of enjoyment of life." Pl.'s Compl. at ¶ 20.

A hotly contested fact is whether the defendant manufactured the particular spray to which the plaintiff was exposed. The plaintiff pinpoints the defendant's hydraulic spray because of the "smell" when sprayed on him and because the only hydraulic fluid he had seen in the storage facility was manufactured by the defendant.

The defendant manufactures a variety of hydraulic fluids. In 1982, the Department of the Navy developed specifications for hydraulic fluid that private suppliers could produce for use by the military. Those product characteristics are found in Military Specification MIL–H–83282. In response to military directive, the defendant submitted a proposal to the Department of the Navy. That product and the subject of this lawsuit is "Royco 782," a synthetic hydraulic fluid.

The Department of the Navy tested the defendant's proposal at the Naval Air Development Center in Warminster, Pennsylvania. On August 22, 1984, the Department of the Navy notified the defendant that Royco 782 met the requirements of specification MIL–H–83282 and gave Royco 782 the government designation 84–H–36 for inclusion on the next Qualified Products List.

The Defense General Supply Center ("DGSC") in Richmond, Virgina, is responsible for procuring a hydraulic fluid meeting specification MIL–H–83282 from among the products on the Qualified Products List. The process essentially follows this course:

(1) The DGSC submits solicitations to hydraulic fluid suppliers on the Qualified Products List for MIL–H–83282.

(b) After receiving such a solicitation, the defendant's personnel are consulted and a bid prepared and submitted to the DGSC.

(3) If the defendant's bid is accepted, the DGSC submits a contract to the defendant, substantially similar to a purchase order.

(4) After scheduling production and shipping requirements, the defendant ships hydraulic fluid pursuant to the contract with the DGSC. The DGSC dictates the date, quantity and designation of each shipment. *See* Dennis Bailey's Aff.

As to the product warnings, the container in which Royco 782 is stored contains the following product information:

### ATTENTION!

Prolonged and repeated skin contact may result in dermatitis or oil acne.

Product contains polyalphaolefin.

Avoid prolonged and repeated skin contact. Do not wear oil-soaked clothing, launder before reuse.

### IN CASE OF:

Eye contact: Flush with large amounts of water.

Skin contact: Remove contaminated clothing and shoes.

Wipe excess from skin. If irritation occurs, seek medical attention.

Inhalation: If overcome or affected by fumes or vapors from heated product, remove victim to fresh air.

Ingestion: Do not induce vomiting. If vomiting occurs, keep head below hips. Seek medical attention.

Fire: Use water fog, foam, dry chemical, or carbon dioxide. Do not use a direct steam of water. Product will float and may reignite.

Spill or leak: Use appropriate protective clothing. Contain and recover product. Keep out of sewers and water systems. The defendant also supplies a Material Safety Data Sheet to the government in connection with each hydraulic fluid product it sells to the government, including Royco 782.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (citations omitted).

In further elaboration on the summary judgment standard, the court has said that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989). The party asking for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552 (citing Fed.R.Civ.P. 56(c)).

## DISCUSSION

### *Government Contractor Defense*

■ The plaintiff's AEMLD claim for negligent and wanton design and manufacture is based on a singular theory that the plaintiff was exposed to hydraulic fluid designed and manufactured by the defendant. The hydraulic fluid, according to the plaintiff, is defective because of its dangerously high level of toxicity. The defendant claims that even when viewing the evidence in the light most favorable to the plaintiff, the defendant is entitled to summary judgment under the government contractor defense. Because this is an affirmative defense, the defendant has the burden of proving that there is no genuine issue of material fact as to each element of the defense. *Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794 (5th Cir. 1993).

■ The government contractor defense shields military contractors from liability under state law for design defects in products manufactured and provided to the United States government. *Harduvel v. General Dynamics Corp.*, 878 F.2d 1311 (11th Cir. 1989), *cert. denied*, 494 U.S. 1030, 110 S.Ct. 1479, 108 L.Ed.2d 615 (1990). This defense essentially is a by-product of the "discretionary function" exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a), which protects the United States from liability for its agents' performance of duties involving discretionary decisions. *Id.*

Courts have recognized that absent the government contractor defense, the government's tort immunity for its discretionary functions would be undermined. Namely,

contractors held liable for design features approved by the government likely would pass on the costs of liability, ultimately imposing costs on the government that its immunity was intended to preclude. *Id.* at 1316 (holding that "[t]he [government contractor] defense derives from the principle that where a contractor acts under the authority and direction of the United States, it shares the sovereign immunity that is enjoyed by the government").

The government contractor defense first was approved in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). There, the Supreme Court of the United States was called upon to decide whether a contractor providing military equipment to the federal government could be held liable under state tort law for an alleged design defect in a helicopter escape hatch. The plaintiff's decedent, a copilot in the United States Marines, was killed in a helicopter crash off the Virginia coast. Although the copilot survived the impact of the crash, he was unable to exit through the escape hatch because water pressure prevented it from opening, causing him to drown. A private contractor designed the helicopter pursuant to government contract specifications, which designated an escape hatch that swung outward. The plaintiff alleged, in part, that the escape hatch was defectively designed because it should have opened inward to avoid water pressure resistance. *Id.* at 502–03, 108 S.Ct. at 2513–14.

Writing for a majority of the Supreme Court, Justice Scalia characterized the defense as a form of federal preemption and recognized that, generally, federal law does not preempt state law absent clear statutory provision or direct conflict between state and federal law. The majority continued, however, by concluding that state law would conflict with federal policy if contractors were held liable for specifically carrying out government-approved specifications, *id.* at 505–508, 108 S.Ct. at 2514–2516; thus, under certain circumstances, preemption of state law is warranted.

The Supreme Court then established a two-part test to determine when federal law will preempt state law in the context of the government contractor defense. The first prong of the test requires that the area involve a "uniquely federal interest." *Id.* at 507, 108 S.Ct. at 2516. The Supreme Court then held that the procurement of military equipment is, as a matter of law, an area of "uniquely federal interest." *Id.* at 509, 108 S.Ct. at 2517. The plaintiff has not contested that the procurement of hydraulic fluid for military helicopters is an area of uniquely federal interest, and the court finds that it is. Accordingly, the defendant has satisfied the first prong. More troubling, however, is resolution of the second prong.

Under the second prong, a "significant conflict" must exist between state and federal law. The Supreme Court held that "state law which holds Government contractors liable for design defects in military equipment ... present[s] a 'significant conflict' with federal policy and must be displaced" if the following three elements are satisfied: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." [2] *Id.* at 512, 108 S.Ct. at 2518.

Reasonably precise specifications and conformity with those specifications refer to the particular feature of the product claimed to be defective. *Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1486 (5th Cir.), *cert. denied*, 493 U.S. 935, 110 S.Ct. 327, 107 L.Ed.2d 317 (1989) (*Boyle* protects government contractors from liability only where "discretion over the design feature in question was exercised by the government.") In other words, the proof required is more than that the United States merely "rubber[-]stamp" the contractor's design. *Id.* at 1480.

For the following reasons, the court finds that a genuine issue of material fact

**2.** In *Boyle,* the record was unclear as to whether the Court of Appeals had considered these three elements. Hence, the Supreme court remanded the case for clarification.

exists precluding the granting of summary judgment on the defendant's government contractor defense. The court stresses that its analysis must focus upon the *"particular feature"* allegedly defective, which is Royco 782's high level of toxicity. *Bailey,* 989 F.2d at 799 (citing *Boyle,* 487 U.S. at 512, 108 S.Ct. at 2518). Namely, the plaintiff contends that a natural Tricresyl Phosphate rather than the synthetic Tricresyl Phosphate used in the hydraulic fluid would have reduced its toxicity.

The defendant generally states, and the plaintiff does not seriously dispute, that the twenty-five page specification, which includes detailed drawings, is reasonably specific as to many of the desired chemical components of the hydraulic fluid. For example, the specifications are precise as to the base stock, additives, oxidation inhibitors, anti-wear agents, blending fluid, red dye concentration, finished fluid properties, specific gravity, corrosiveness and oxidation stability, solid partial contamination, foaming characteristics, flammability, high pressure spray ignition and flame propagation. Rather, it is the specificity of the toxicity that is in dispute.

The plaintiff and defendant raise numerous arguments and provide ample case law that purportedly supports their respective positions, all of which the court has carefully studied and weighed with great care. The court, however, need only address the plaintiff's argument and supporting facts that lead to a genuine issue of material fact. The plaintiff submits the deposition of David Clarke, the Laboratory Director for the defendant, who states that the military specifications are silent with regard to the toxicity of the hydraulic fluid. Clarke's Dep. at 56. This silence, argues the plaintiff, raises a factual issue as to whether the specifications were reasonably precise. The court agrees.

The plaintiff relies on several cases. In *Trevino, supra,* a products liability case, the court held that the government specifications were not reasonably precise where they established only general performance standards for a submarine hanger diving chamber but were "silent" on the precise location of the allegedly defective vent valve and safety devices. Moreover, in *Boyle,* the court set

forth a hypothetical in which the government contractor defense would not apply:

> If, for example, the United States contracts for the purchase and installation of an air conditioning-unit, specifying the cooling capacity but not the precise manner of construction, a state law imposing upon the manufacture of such units a duty of care to include a certain safety feature would not be a duty identical to anything promised the Government, but neither would it be contrary. The contractor could comply with both its contractual obligations and the state-prescribed duty of care. No one suggests that state law would generally be pre-empted in this context.

*Boyle,* 487 U.S. at 509, 108 S.Ct. at 2517.

Here, the court has carefully examined the twenty-five page specification and finds as in *Bailey,* the military specification is silent as to level of toxicity. The defendant points to general requirements that the anti-wear agents meet federal specification TT–T–656 and that the defendant had to submit Material Safety Data Sheets meeting federal standard FED–STD–313, toxicological data and appropriate product labels. The court finds that these requirements are much less vague than cases in which this circuit has allowed a defendant to prevail on the government contractor defense. For example, in *Glassco v. Miller Equip. Co.,* 966 F.2d 641, 642 (11th Cir.1992), the Eleventh Circuit applied the government contractor defense in a products liability case in which the plaintiff sued the designer and manufacturer of a lineman's belt. The plaintiff claimed that the belt was defective because it was made of leather and was cut too thin, thereby causing the belt to break under stress. The plaintiff, a tree trimmer, fell and suffered permanent paralysis when his belt broke. The belt had been manufactured by the defendant pursuant to government specifications for use by the United States Army in the Korean War. The court held that where the government specifications provided minimum dimensions for width and thickness of the belt and expressly required the use of leather, the specifications were "reasonably precise" as a matter of law. *Id.* at 643.

The specifications here, unlike those in *Glassco, supra,* provide considerable discretion to the contractor in formulating the components of the product. In *Glassco,* the contractor had little, if any, leeway in constructing the belt, which could only be made of one material and with specificized measurements. Here, however, the confines were not restricted as to the degree of toxicity, giving the defendant wider latitude. As already stated, one purpose of the government contractor defense is to alleviate a manufacturer's dilemma when it cannot alter a component of a product but must produce it strictly in compliance with government specifications. This does not seem to be the case here.

Moreover, contrary to *Boyle,* the state-imposed duty of care that is the purported basis of the defendant's culpability (specifically, the duty to formulate a less toxic hydraulic fluid) is not contrary to the Government's specifications for the hydraulic fluid. In other words, it appears that the defendant could have formulated a less toxic hydraulic fluid that met the government specifications and complied with applicable state law.

Finally, it appears that the defendant, which is engaged primarily in the business of manufacturing chemicals, should have known just as much, if not more, than the government regarding the toxic nature of chemicals. It is the opinion of the court that this knowledge significantly weakens the applicability of the government contractor defense. Accordingly, the court finds that the defendant has not established the absence of a factual issue as to each and every element of the government contractor defense. Hence, summary judgment is due to be denied.

### *Failure-to-Warn*

█ The complaint further asserts that the defendant "negligently or wantonly failed to warn plaintiff" of the dangers associated with the hydraulic fluid and exposure thereto.[3] Pl.'s Compl. at ¶ 15. As to this claim, the defendants have not raised the government contractor defense but, rather, challenge it on the merits.[4] To maintain an action for failure to warn based upon a negligence theory or under the AEMLD, the plaintiff must prove: (1) that the defendant had a duty to warn him of the product's danger when used in its customary manner; (2) the defendant's warning breached that duty because it was inadequate; and (3) the breach proximately caused the plaintiff's injuries. *Campbell v. Robert Bosch Power Tool Corp.,* 795 F.Supp. 1093, 1097 (M.D.Ala. 1992) (Thompson, J.).

█ A warning, however, is adequate if it is "one that is reasonable under the circumstances, and it need not be the best possible warning." *Gurley v. American Honda Motor Co.,* 505 So.2d 358, 361 (Ala. 1987). Moreover,

> [i]t is well settled that a manufacturer is under no duty to warn a user of every danger which may exist during the use of the product, especially when such danger is open and obvious.... The objective of placing a duty to warn on the manufacturer of a product is to acquaint the user of a danger of which he is not aware, and there is no duty to warn when the danger is obvious.

*Id.*

The crux of the plaintiff's argument is that the warning is inadequate because it failed to instruct of the necessity of wearing a respirator. The plaintiff has submitted the affidavit of Jerry L. Purswell, Ph.D., a mechanical engineer, who addressed the inadequacy of the warning: "The Royco 782 involved in this accident was defective because of the absence of warnings and instructions that would have

---

**3.** The defendant argues in brief that the plaintiff's failure-to-warn claim is based solely on the theories of negligence and wantonness and does not assert a failure-to-warn claim under the AEMLD. The court has carefully studied the complaint and finds that the averments therein are sufficient to place the defendant on notice that the claim also is brought under the AEMLD.

**4.** The court notes that the applicability of the *Boyle* government contractor defense in a failure-to-warn case appears uncertain. In *Dorse v. Eagle–Picher Indus., Inc.,* 898 F.2d 1487, 1488 (11th Cir.1990), the Court of Appeals for the Eleventh Circuit, when faced with the issue, remarked that the defense is "limited to design defect cases" but that "the *Boyle* decision ... is not completely meaningless in 'failure to warn' cases."

alerted [the plaintiff] or his employer to the need to wear [a] respirator at all times while working on or around hydraulic systems or hydraulic lines in which this fluid is contained." Purswell's Aff. at ¶ 8.

█ The defendant has moved to strike the latter paragraph of Purswell's affidavit. Because the *Federal Rules of Civil Procedure* require that "supporting and opposing affidavits shall set forth such facts as would be admissible in evidence," Fed.R.Civ.P. 56(e), the court first must consider whether Purswell's statement is admissible in ruling on the motion for summary judgment. The court emphasizes that the admissibility of expert testimony is "within the sound discretion of the trial court." *Reyes v. Wyeth Laboratories,* 498 F.2d 1264, 1284 (5th Cir. 1974), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974).

█ The defendant first argues that Purswell's opinion as to the adequacy of the warning constitutes an inadmissible legal conclusion. The court agrees in part. If Purswell's opinion means that the absence of an instruction to wear a respirator renders the warning "inadequate," *as that term is defined under Alabama law,* then it is not admissible. Such a statement would not be factual evidence but rather would constitute an attempt to instruct on the application of the law concerning a failure-to-warn claim and the legal implications of the defendant's conduct. *See Marx & Co., Inc. v. Diners' Club, Inc.,* 550 F.2d 505, 509–10 (2nd Cir. 1977), *cert. denied,* 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977) ("It is not for the witnesses to instruct the jury as to the applicable principles of law, but for the judge.") In other words, an expert may not give an opinion that amounts to a blanket assertion of how a case should be decided. Particularly on a motion for summary judgment, the admission of such an opinion would be contrary to the plaintiff's burden, which is to present a genuine issue of material *fact.* Hence, the court will disregard any attempt by Purswell to instruct the court on the requisite legal conclusion in regard to the defendant's motion for summary judgment.

█ While an expert's legal conclusions are not admissible, an opinion as to the ultimate issue of fact is admissible, so long as it is based upon a valid scientific methodology and supported by facts. *See* Fed.R.Evid. 704. The "ultimate issue of fact," as used in Rule 704, means that the expert furnishes an opinion about inferences that should be drawn from the facts and the trier's decision on such issue necessarily determines the outcome of the case. *See Montgomery v. Aetna Cas. & Surety Co.,* 898 F.2d 1537, 1541 (11th Cir.1990). This leads to the defendant's second objection.

Next, the defendant objects to Purswell's testimony on the basis that he has not relied on any type of scientific methodology in reaching his conclusion. In the most recent case concerning the admissibility of expert testimony, the Supreme Court of the United States held that when "[f]aced with a proffer of expert scientific testimony, ... a trial judge must determine at the outset, pursuant to Rule 104(a) [*Federal Rules of Evidence*], whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, ——, 113 S.Ct. 2786, 2797, 125 L.Ed.2d 469 (1993) (footnote omitted); *see* Fed.R.Evid. 702.

█ While the Supreme Court declined to set out an exhaustive list of factors governing the validity of a scientific principle, the court emphasizes that the following factors may bear on the inquiry:

(1) whether the principle has been or can be tested;

(2) whether the principle has been subject to peer review and publication;

(3) whether the known or potential rate of error associated with the principle is excessive; and

(4) whether the principle has achieved widespread acceptance in the scientific community.

*Id.* at —— – ——, 113 S.Ct. at 2796–97.

█ Here, the court allowed the plaintiff to supplement Purswell's affidavit in order to comply with the dictates of *Daubert.* After reviewing the supplemental affidavit, the

court finds that Purswell's testimony regarding warnings is "supported by appropriate validation" and is, thus, admissible. *Id.* at ——, 113 S.Ct. at 2795. Purswell's affidavit and supplemental affidavit indicate that he has more than thirty years of work experience in industrial and mechanical engineering. He also has conducted research in the area of product safety and warnings and has developed warnings and instructions for numerous product manufacturers.

Purswell asserts that he studied and relies upon literature about the "systems safety methodology" in determining whether additional warnings were necessary. Purswell's Suppl.Aff. at ¶ 6. According to Purswell, "[t]he systems safety methodology is a process whereby a product is evaluated in terms of its dangers and/or hazards posed to the ultimate user." *Id.* Purswell further states that this method has been in existence for "many years" and is a "well recognized methodology within the disciplines of both mechanical engineering and industrial engineering." *Id.*

Based upon the facts in Purswell's affidavits, the court finds that the scientific methodology upon which he relied meets the requirements of *Daubert.* The court further finds that Purswell is not stating an opinion about the law but is simply explaining a standard practice in the mechanical engineering industry. This is an opinion about facts and is admissible on a motion for summary judgment.

The court further notes that it has carefully read the briefs of the defendant and acknowledges the alleged inadequacy's of Purswell's testimony, as pointed out by the defendant, such as the fact that he has never been involved in a case about neurotoxic exposure. These purported "shortcomings," however, go to the credibility and weight of his testimony, which is a question properly left for the trier of fact at the trial on the merits. *See Knight v. Otis Elevator Co.,* 596 F.2d 84 (3d Cir.1979).

The court finds that Purswell's statement infers a breach of a duty by the defendant in failing to include a warning on its product about the necessity of wearing a respirator at all times. As to the causation element, the court need not look to the experts' affidavits. The Material Safety Data Sheet for Royco 782, which was prepared by the defendant, contains the necessary factual dispute. It expressly states that "[t]his product may be toxic if swallowed. Resulting in delay neurotoxicity." Neurological damage is one of the injures for the plaintiff seeks damages.

The defendant, however, argues that the plaintiff cannot survive summary judgment because he has failed to submit "substantial evidence" that Royco 782 is the product to which he was exposed. Def.'s Reply Br. in Supp.Mot.Summ.J. at 27. The court finds this argument without merit. The defendant is correct that product identification is an element of causation and a "threshold requirement" in any products liability case. *Sheffield v. Owens–Corning Fiberglass Corp.,* 595 So.2d 443, 450 (Ala.1992). The plaintiff may meet his or her burden through "circumstantial as well as direct evidence." [5] *Id.*

First, the court notes that the defendant has stated the wrong legal standard for judging a motion for summary judgment. The *Federal Rules of Civil Procedure* govern in this action and do not require "substantial evidence," but rather provide that the plaintiff must show a "genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The defendant also relies on *Sheffield* in support of its argument. There, the plaintiffs sought to prove that they had been exposed to Owens–Corning asbestos by showing that Kaylo, an asbestos material manufactured by Owens–Corning, was listed on the government's Qualified Products List. The court granted summary judgment against some of the plaintiffs and held insufficient the plaintiffs' argument that the asbestos was available for use on any and all government maritime vessels:

> Proof that Kaylo was *approved for use* in maritime construction, without more, falls

---

**5.** Circumstantial or indirect evidence is the proof of a chain of facts or circumstances pointing to the existence or nonexistence of certain facts. *See Pattern Jury Instructions, Civil Cases,* United States Eleventh Circuit District Judges Association, 1990 Ed. at § 2.1.

considerably short of the proof needed to create a reasonable inference that it was, in fact, initially installed on any *particular vessel.* Such evidence creates nothing more than a "mere possibility" that Kaylo was on board a particular vessel, and, consequently, that it was a cause-in-fact of the alleged injuries.

*Id.* at 451–52. Also insufficient to create an inference was the fact that the asbestos product was in use at certain shipyards where the plaintiff's ship were built. *Id.* at 453.

The court finds the instant case distinguishable. Here, it is undisputed that Royco 782 was at least one of the hydraulic fluids used in the Chinook helicopters at Fort Rucker. This fact, coupled with the plaintiff's testimony that Royco 782 was the only hydraulic fluid he ever saw in the storage shed at Fort Rucker and that it had been used before in the Chinook helicopter upon which he was working, is sufficient to overcome a motion for summary judgment. The court finds that the inference drawn from circumstantial evidence is of sufficient strength to connect the use of Royco 782 in the Chinook helicopter.

■ Additionally, the defendant admits that the warning label did not expressly state that a person working around the hydraulic fluid should wear a respirator on his or her face at all times. Nevertheless, the defendant argues that the warning was legally sufficient, because it admonished the user to "use appropriate protective clothing" to prevent contact with a "spill or leak." The court underscores that its function on a motion for summary judgment is not resolve factual disputes. At the very least, an issue exists about whether "protective clothing" is an adequate caution and whether "protective clothing" impliedly includes a respirator.

■ Finally, the defendant urges summary judgment on the basis that the toxic danger of the hydraulic fluid was open and obvious to the plaintiff. The court finds that based upon *Bean v. BIC Corp.,* 597 So.2d 1350, 1353 (Ala.1992), "summary judgment based upon the danger's being open and obvious would be improper, as such a determination is a factual issue for the jury."

Accordingly, the court finds that summary judgment on the plaintiff's failure-to-warn is due to be denied.

### Breach of Warranty and Breach of Contract

■ The defendant also claims that it is entitled to summary judgment on the plaintiff's breach of warranty and breach of contract claims. In his response, the plaintiff did not submit any evidence or even address his breach of warranty and breach of contract counts, thus, leaving only the allegations in the complaint. In federal court, a party cannot "rest on [the] pleadings" and survive summary judgment. This is clearly a misunderstanding of Rule 56 of the *Federal Rules of Evidence:*

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

Accordingly, the court finds that summary judgment is due to be granted as to the breach of warranty and breach of contract claims.

### CONCLUSION

For the foregoing reasons, it is CONSIDERED and ORDERED that the defendant's motion be and the same is hereby GRANTED as to the plaintiff's breach of contract and breach of warranty claims.

It is further CONSIDERED and ORDERED that the defendant's motion for summary judgment as to remaining counts contained in the complaint be and the same is hereby DENIED.

It is further CONSIDERED and ORDERED that the defendant's motions and supplemental motions to strike certain portions of the plaintiff's affidavit and the affida-

vits of expert witnesses George Edward Clarke, Ph.D. and James Luther Booker, Ph.D., be and the same is hereby DENIED AS MOOT.

It is further CONSIDERED and OR-DERED that the defendant's motion and supplemental motion to strike certain portions of expert witness Jerry L. Purswell, Ph.D.'s affidavit be and the same is hereby DENIED.