**Adrianne RODGERS, as administratrix of the Estate of Richard Sims, Deceased, Plaintiff,**

v.

**SHAVER MANUFACTURING CO., INC. et al., Defendants.**

**No. CIV.A. 97–D–48–N.**

United States District Court, M.D. Alabama, Northern Division.

Feb. 5, 1998.

*v. Williams,* 862 F.2d 1471, 1478 (11th Cir.1989) (citing *City of St. Louis v. Praprotnik,* 485 U.S. 112, 126, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)).

Elizabeth H. Shaw, Frank O. Hanson, Jr., Birmingham, AL, for Plaintiff.

Steadman Shealy, Jr., Joseph A. Morris, Dothan, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant Shaver Manufacturing Company, Inc.'s ("Shaver") Motion for Summary Judgment, filed November 10, 1997. Defendant filed an Amended Motion for Summary Judgment on November 14, 1997, to correct the name of the Defendant filing said Motion. Plaintiff filed a Brief and Evidentiary Submissions in Opposition to Motion for Summary Judgment on December 12, 1997. On January 9, 1998, Defendant filed a Response to Plaintiff's Brief in Opposition to Defendant's Summary Judgment Motion. Finally, on January 23, 1998, Plaintiff filed a Response to Defendant's Response to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.[1] After careful consideration of these numerous pleadings, the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendant's Motion for Summary Judgment is due to be granted in part and denied in part.

### JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity). The parties do not contest personal jurisdiction or venue.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also* Fed.R.Civ.P. 56(e).

1. Plaintiff filed a Motion to Strike Defendant's Response to Plaintiff's Opposition to Defendant's Motion for Summary Judgment in conjunction with the January 23, 1998 Response to Defendant's Response to Plaintiff's Opposition. On January 27, 1998, the court denied Plaintiff's Motion to Strike, and ordered the Parties to refrain from filing further pleadings regarding Defendant's Motion for Summary Judgment, absent exigent circumstances.

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita*, 475 U.S. at 587; *see also Anderson*, 477 U.S. at 249.

## STATEMENT OF FACTS

On December 9, 1994, Richard Sims ("Sims") was killed while helping to dig a hole for a fence post. In digging this fence post hole, Sims and those he was working with used machinery, parts of which were manufactured and distributed by Defendant Shaver. Specifically, Sims was using a Shaver Model 300 post hole digger ("digger"), which includes an arm attaching the machinery to the PTO shaft of a tractor. The PTO shaft transmits the tractor's power to the digger's gearbox. A screw-like auger is connected to the underside of the gearbox. The auger turns and bores holes into the ground. Shaver manufactured and distributed the digger, the arm attaching the digger to the tractor, and the digger's gearbox. The auger was not manufactured by Shaver, but rather was manufactured by an individual and modified to fit into the Shaver digger.

Because the ground into which they drilling was hard, those operating the digger and auger experienced difficulty drilling the hole with the auger. Thus, it was necessary for Sims and those working with him to physically push down on a part of the machinery near the auger. As the auger was turning, either the wire fence became entangled with Sims, pulling him into the auger, or Sims became entangled in the auger and then the wire became entangled after that, killing Sims.

Plaintiff Adrianne Rodgers ("Rodgers") brought this action in the Circuit Court of Bullock County, Alabama, on behalf of her decedent, Sims, alleging that Shaver: (1) negligently and wantonly designed, manufactured, distributed and sold the auger, in violation of the Alabama Extended Manufacturers Liability Doctrine ("AEMLD"); (2) negligently or wantonly failed to warn Sims of the dangers associated with the auger; and (3) breached express or implied warranties of fitness and suitability. Shaver removed the case, based upon diversity of citizenship, on January 14, 1998. Shaver now moves for summary judgment on all claims.

## DISCUSSION

As a threshold matter, Shaver argues that it should not remain a Defendant in this lawsuit as a result of the fact that the allegations contained in Plaintiff's Complaint are based upon Shaver's design and manufacture of the auger involved in Sims' death, yet it is undisputed that Shaver neither manufactured nor designed the auger. (Def.'s Br. in Supp. of its Mot. for Summ. J. ("Def.'s Br. in Supp.") at 9.) Plaintiff argues that Shaver's contention in this regard is "nothing more than a matter of semantics," as both Plaintiff and Shaver know that the product at issue in this action is the post hole digger machinery manufactured, sold and distributed by Shaver. (Pl.'s Br. and Evid. Sub. in Opp. to Mot. for Summ. J. ("Pl.'s Br. in Opp.") at 5.)

The court agrees with Plaintiff that Shaver's argument in this regard is merely a matter of semantics. Accordingly, the court construes Plaintiff's Complaint to allege Shaver's liability for the design, manufacture, distribution and sale of the post hole digger, rather than the auger. The court notes that Shaver will not be prejudiced by this construction, as Shaver is clearly on notice as to the machinery at issue in this case; such notice is revealed in the multitude of pleadings submitted in reference to Shaver's Motion for Summary Judgment.

## I. Breach of Express or Implied Warranties of Fitness and Suitability

Plaintiff concedes that summary judgment is due to be granted with regard to her claim that Shaver breached express and/or implied warranties of fitness and suitability. (Pl.'s Br. and Evid. Sub. in Opp. to Mot. for Summ. J. at 23.) Hence, the court finds that Defendant's Motion for Summary Judgment on this claim is due to be granted.

## II. Plaintiff's AEMLD Claims

■ The AEMLD is a judicially created products liability doctrine. *Atkins v. American Motors Corp.*, 335 So.2d 134 (Ala.1976). In order to establish liability under the AEMLD, a plaintiff must show:

(1) he suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it· is sold.

*Halsey v. A.B. Chance Company*, 695 So.2d 607, 608 (Ala.1997)(quotations and citations omitted).

In its Motion for Summary Judgment, Defendant raises several arguments as to why Plaintiff's claims under the AEMLD must fail. The court will address each of these in order.

### A. *Defective and Unreasonably Dangerous*

■ "[A] defective product is one that is unreasonably dangerous, i.e., one that is not fit for its intended purpose or that does not meet the reasonable expectations of the parties." *Beam v. Tramco, Inc.*, 655 So.2d 979, 981 (Ala.1995). Moreover, "it makes no difference whether it is dangerous by design or defect. The important factor is whether it is safe or dangerous when the product is used as it was intended to be used." *Casrell v. Altec Indus., Inc.*, 335 So.2d 128, 133 (Ala. 1976). Finally, "[w]hether a product is 'unreasonably dangerous' is for the trier of fact, just as negligence, vel non, is in a traditional negligence case." *Id.*

■ Shaver contends that the Shaver Model 300 post hole digger at issue in this case does not meet the definition of "defective" and "unreasonably dangerous," as articulated by the Alabama Supreme Court. Specifically, Shaver contends that the Shaver post hole digger was in a condition contemplated by the user when it left Shaver's hands, and the mere fact that an injury occurred while the product was being used is

not enough for the post hole digger to be considered defective or unreasonably dangerous. (Def.'s Br. in Supp. at 13.) Shaver argues that Plaintiff must submit evidence that depicts. why the post hole digger is unreasonably dangerous or defective. ·(*Id.*)

In support of its allegation that the Shaver post-hole digger is defective and unreasonably dangerous, Plaintiff offers the expert testimony of a licensed professional mechanical engineer with research experience regarding post-hole auger accidents, John B. Sevart. (Aff. of John B. Sevart, P.E., attached as Ex. 1 to Pl.'s Br. and Evid. Sub. in Opp. to Def.'s Mot. for Summ. J. ("Sevart Aff.").) Based on his examination of the pleadings, photographs of the subject post-hole digger, affidavits and depositions contained in the record, and Sims medical records, (Sevart Aff. ¶ 3), Sevart states:

4. It is my professional opinion that the ·subject Shaver Model 300· post-hole digger is defective in design and unreasonably dangerous. The post-hole digger has associated with its foreseeable use a recognized hazard with a foreseeable risk of serious injury or death. Shaver Manufacturing Company knew or should have known of technically and economically feasible design alternatives that would have significantly reduced the risk without adversely affecting the utility of the machine. The hazard in this instance is that of entanglement on the rotating components of the machine and the risk is that of serious injury or death. Shaver Manufacturing Company, in deciding to use their design without utilizing the feasible design alternatives, also failed to adequately warn of the hazard and risk associated with the use of their machine.

10. The design defects as well as the defects in the warnings were present in the machine when it left the control of the manufacturer.

11. The defects in the post-hole digger were causative of the fatal injuries received by Mr. Sims.

(Sevart Aff. ¶¶ 4, 10, 11.)

In support of its argument that there existed an alternative design which would have

eliminated or reduced the risk of Sims injuries, and that such alternative design was of greater overall safety than the design that Shaver actually used, Plaintiff again offers Sevart's affidavit. The affidavit states, in relevant part:

14. The subject post-hole digger should have been designed with a barrier guard over the auger to gearbox connection. The guard should be made integral to the design of the post-hole digger, such that the machine would not function without the guard in place.

15. The post-hole digger could have been designed such that the auger to gearbox connection did not have protrusions. Such a design would not utilize through holes in the connection such that overly long fasteners could not be used in the connection.

16. The warnings provided with the post-hole digger were inadequate. Warnings should have been affixed on the post-hole digger in a location which would be clearly visible. The warnings should identify the hazard of the entanglement in the rotating components, state the level of risk, and clearly state the precautions to be taken to avoid the hazard.

17. It is my professional opinion, with a reasonable degree of engineering certainty, that the alternative designs and warnings described above were economically and technically feasible; that the post-hole digger was defective in design and not reasonably safe when it was originally sold; and that the failure of the defendant to provide a product which incorporated such alternative designs and warnings was a proximate cause of the accident and the plaintiff's fatal injuries.

(Sevart Aff. ¶¶ 14–17.) Sevart further states that the proposed safer, practical alternative design was available to Shaver at the time the post-hole digger at issue was produced, in 1982 and prior. (Supplemental Aff. of John B. Sevart. P.E., attached as Ex. B to Pl's Resp. and Mot. to Strike Def.'s Resp. to Pl.'s Opp. to Def.'s Mot. for Summ. J., ¶¶ 5, 6.) Defendant has failed to conclusively rebut Plaintiff's proffered evidence.

As stated, the general rule is that the determination of whether a product is defective under the AEMLD is a jury function. *Casrell,* 335 So.2d at 133. Here, the court finds that Plaintiff has offered sufficient evidence that the Shaver digger was defective and unreasonably dangerous to rebut Shaver's contentions and establish a genuine issue of material fact for trial.

### B. *Substantially Altered*

Shaver contends that summary judgment is due to be granted in its favor, as Plaintiff fails to establish that the product at issue reached the user without substantial change in the condition in which it was sold. Specifically, Shaver argues that the post-hole digger at issue had attached to it a non-Shaver manufactured auger, which was modified so that it would attach to the Shaver post-hole digger.

■ Under Alabama law,

An essential element of an AEMLD claim is proof that the product reached the consumer without substantial change in the condition in which it was sold. *Clarke Indus., Inc. v. Home Indemn. Co.,* 591 So.2d 458, 462 (Ala.1991); *see also Caterpillar Tractor Co. v. Ford,* 406 So.2d 854 (Ala.1981). However, the mere fact that a product has been altered or modified does not necessarily relieve the manufacturer or seller of liability. *Johnson v. Niagara Machine & Tool Works,* 555 So.2d 88, 91 (Ala.1989). A manufacturer or seller remains liable if the alteration or modification did not in fact cause the injury, *Johnson,* 555 So.2d at 91 [internal quotations and citations omitted], or if the alteration or modification was reasonably foreseeable to the manufacturer or seller. *Clarke Indus.,* 591 So.2d at 462; *Beloit Corp. v. Harrell,* 339 So.2d 992 (Ala.1976).

*Halsey,* 695 So.2d at 608 (quoting *Sears, Roebuck and Co. v. Harris,* 630 So.2d 1018, 1027 (Ala.1993), *cert. denied,* 511 U.S. 1128, 114 S.Ct. 2135, 128 L.Ed.2d 865 (1994)). Accordingly, the question before the court is whether a jury could find that it was foreseeable to Shaver that someone would use a non-Shaver auger modified to fit a Shaver manufactured digger. *See Halsey,* 695 So.2d

at 608. In addition, the court must determine whether there is a genuine issue as to whether the alteration was the factual and proximate cause of the injury. *Kirk v. Garrett Ford Tractor, Inc.*, 650 So.2d 865, 867 (Ala.1994).

In opposition to Defendant's Motion for Summary Judgment, Plaintiff contends that the "alteration" of attaching a modified non-Shaver manufactured auger to the Shaver post-hole digger was indeed "foreseeable." In support of this contention, Plaintiff offers the deposition testimony of Shaver's President and chief executive officer, Edwin M. Parsons, wherein Parsons offers several examples of companies that make augers that could be modified for use with the Shaver post-hole digger. (Parsons Dep. at 22–25.) Further, Plaintiff offers the affidavit of its expert, Sevart, stating that the Shaver 300 post-hole digger utilized a standard gear box, and "[a]ny auger manufacturer could provide an auger with the hole spacing to match the output shaft of the standard purchased gearbox. It would·be a simple task to drill the holes necessary in the auger shaft to bolt it to the output shaft of the gearbox." (Sevart Aff. ¶¶ 7, 8.)

■ Where the plaintiff offers expert testimony in opposition to the summary judgment motion constituting substantial evidence that the alteration in question was foreseeable, then the plaintiff's AEMLD claim should be submitted to a jury. *See e.g., Halsey*, 695 So.2d at 609; *Hicks v. Commercial Union Ins. Co.*, 652 So.2d 211, 218 (Ala.1994); *Clarke Indust., Inc. v. Home Indem. Co.*, 591 So.2d 458, 461 (Ala.1991). Thus, although no other augers may have been made specifically to fit the Shaver post-hole driller unaltered, the court finds that Plaintiff has established that there exists a genuine issue of fact as to whether it was reasonably foreseeable to Shaver that a modification to a non-Shaver auger would allow it to properly fit the Shaver post-hole digger.

■ Furthermore, Plaintiff contends that any alteration to the post-hole digger, through the use of a non-Shaver auger, did not cause Sims' fatal injuries. Plaintiff notes Shaver's contention that the use of a substituted single bolt, rather than two bolts, to attach the non-Shaver auger to the Shaver

post-hole digger may have played a part in Sims' accident, as the single bolt "sticks out approximately two to three inches" rather than ending just outside of the shaft. (Parson's Dep. at 61–62.) However, Plaintiff's expert's affidavit states that it was or should have been foreseeable to Shaver that "users of the post-hole digger would use overly long or protruding fasteners in connection with through holes, such as the auger to gearbox connection.... [and] *the gearbox, with the through holes for the attachment of the auger, was part of the Shaver design.*" (Sevart Aff. ¶¶ 6, 9 (emphasis added).) Thus, viewed in a light most favorable to Plaintiff, the record indicates that, if protruding fasteners did indeed cause Sims' fatal injuries, this was the result of the Shaver digger's design, rather than the result of the digger being altered by the attachment of a modified non-Shaver auger. Where the plaintiff presents substantial evidence to rebut the showing that the alteration of the product caused the injury, summary judgment is inappropriate. *Kirk*, 650 So.2d at 867. Here, the court finds that Plaintiff has offered expert testimony showing both the foreseeable nature of the alteration in question, as well as that the alteration in question was the cause of the injury. Accordingly, summary judgment on the ground that the product in question was substantially altered is due to be denied.

### C. *Proximate Cause*

■ Buried in Defendant's Response to Plaintiff's Brief in Opposition to Defendant's Summary Judgment Motion ("Def.'s Resp.") is the argument that Plaintiff has failed to establish that the Shaver 300 post-hole digger was the proximate cause of Plaintiff's fatal injuries. Shaver states:

> There has been no evidence as to how Mr. Sims became entangled in the auger, but rather there has been conjecture and speculation. Even the witnesses to the accident in their sworn statement, which were submitted with this Defendant's Brief, do not know how Mr. Sims became entangled.

(Def.'s Resp. at 9.) The court finds that, to the contrary, Plaintiff has offered sufficient evidence to establish proximate cause for purposes of surviving Defendant's Motion for

Summary Judgment. Specifically, Plaintiff offers the affidavit of its expert, Sevart, stating that the failure of Shaver to design a proper product and warn with regard to the dangers of the product caused Plaintiff's injuries and death. (Sevart Aff. ¶ 11.) Accordingly, viewing the record in a light most favorable to plaintiff, the court finds that summary judgment on the ground that Plaintiff has failed to establish proximate cause is inappropriate.

### D. *Affirmative Defenses*

Under Alabama law, a defendant may plead several affirmative defenses to an AEMLD claim. These include contributory negligence, product misuse, assumption of risk, and lack of a causal relation. *See Kelly v. M. Trigg Enterprises, Inc.*, 605 So.2d 1185, 1192 (Ala.1992); *Dennis v. American Honda Motor Co.*, 585 So.2d 1336, 1339 (Ala.1991);; *see also Goree v. Winnebago Indus., Inc.*, 958 F.2d 1537 (11th Cir.1992). Because these are affirmative defenses, a defendant who moves for summary judgment has the burden of proving that there is no genuine issue of material fact as to each of the elements of the defenses raised. *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 470 (11th Cir.1993).

#### 1). *contributory negligence*

 Contributory negligence is an affirmative defense under the AEMLD. *Hicks*, 652 So.2d at 219 (citing *General Motors, Inc. v. Saint*, 646 So.2d 564 (Ala.1994) and *Campbell v. Cutler Hammer, Inc.*, 646 So.2d 573 (Ala.1994)). According to recent Supreme Court of Alabama cases, in order to find that a Plaintiff has been contributorily negligent,

> there must be a finding that the Plaintiff put himself in danger's way ... and a finding that the Plaintiff appreciated the danger confronted .... Moreover, it must be demonstrated that the Plaintiff's appreciation of the danger was a conscious appreciation at the moment the incident occurred....Mere 'heedlessness' is insufficient to warrant a finding of contributory negligence as a matter of law.

*Hicks*, 652 So.2d at 219 (quoting *Central Alabama Electric Co-op. v. Tapley*, 546 So.2d 371, 381 (Ala.1989)(internal quotations and citations omitted)).

 Here, Shaver contends that Plaintiff had knowledge and appreciation of the dangers associated with the use of the machinery at issue, yet failed to use reasonable care by placing himself in the way of danger. (Def.'s Br. in Supp. at 24.) Specifically, Shaver points to the fact that Plaintiff worked for Mike Sheppard in the timber industry cutting and moving timber and thus was familiar with different types of equipment and their dangers in the industry. (*Id.*) Further, Shaver argues that the fact that Plaintiff placed his foot on the wire fence to keep it from becoming entangled in the auger is further evidence that the Plaintiff had an appreciation of harm that could result. (*Id.*) Finally, Shaver argues that Plaintiff placed himself in the way of the auger by improperly pushing the auger into the ground. (*Id.*)

In contrast, Plaintiff's expert states:

> Owners, operators and users of the Shaver Model 300 post-hole digger would not expect the machine to be as dangerous as it was. Persons that typically operate post-hole diggers would not be expected to appreciate the risk associated with the speed that clothing, fence wire and limbs could be entangled in the rotating components of the machine; the hazard of contact with the powered rotating components and the risk of serious injuries. They would not have an appreciation of how irreversible the accident would be, how often accidents had occurred, or have knowledge of how to protect themselves.

(Sevart Affid. ¶ 12.)

The court finds that there is a genuine issue of material fact as to whether, at the time Sims placed himself in danger, he had a conscious appreciation of the danger posed by the possibility that he would become entangled in the auger and digger. Accordingly, a finding of contributory negligence as a matter of law is inappropriate, *Hicks*, 652 So.2d at 219, and summary judgment on this ground is due to be denied.

#### 2). *assumption of risk*

 Assumption of risk is an affirmative defense under the AEMLD, as well. *Reynolds*, 989 F.2d at 470; *see also Hicks*, 652 So.2d at 219. "If the user or consumer

discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery." *Hicks*, 652 So.2d at 219 (quoting *Atkins v. American Motors Corp.*, 335 So.2d 134, 143 (Ala.1976)). This defense requires proof of three elements: "(1) knowledge by the Plaintiff of the condition; (2) appreciation by the Plaintiff of the danger or risk posed by that condition; and (3) a voluntary, affirmative exposure to the danger or risk." *Reynolds*, 989 F.2d at 470 (quoting *Sprouse v. Belcher Oil Co.*, 577 So.2d 443, 444 (Ala.1991)). "In an AEMLD action, whether the injured person assumed the risk of injury or death is ordinarily a question of fact for the jury." *Hicks*, 652 So.2d at 219. A general awareness of danger is not sufficient to establish that one assumed the risk of injury. *Reynolds*, 989 F.2d at 470. A Plaintiff's state of mind is judged by a subjective standard and it is the factfinder who determines whether the Plaintiff had actual awareness of the risky condition. *Id.* (citing *McIsaac v. Monte Carlo Club, Inc.*, 587 So.2d 320, 324–25 (Ala.1991)).

■ Where circumstantial evidence creates a genuine issue of material fact as to whether, at the time of the accident, Sims was specifically aware of the danger posed by the digger and whether he voluntarily and intelligently assumed the risk of death by using said auger, summary judgment is inappropriate. *Hicks*, 652 So.2d at 219; *see also Reynolds*, 989 F.2d at 470. For the reasons set forth above, the court finds that Plaintiff has raised a genuine issue of material fact regarding whether Sims assumed the risk leading to his fatal injuries, thus precluding summary judgment on this ground.

### III. Negligent or Wanton Failure to Warn

#### A. *Negligent Failure to Warn*

■ To maintain an action for failure to warn based upon a negligence theory or under the AEMLD, the plaintiff must prove: (1) that the defendant had a duty to warn him or her of the product's danger when used in its customary manner; (2) the defendant's warning breached that duty because it was inadequate; and (3) the breach proxi-

mately caused the plaintiff's injuries. *Strickland v. Royal Lubricant Company*, 911 F.Supp. 1460, 1468 (M.D.Ala.1995). A warning is "adequate" if it is "one that is reasonable under the circumstances, and it need not be the best possible warning." *Strickland*, 911 F.Supp. at 1468 (quoting *Gurley v. American Honda Motor Co.*, 505 So.2d 358, 361 (Ala.1987)).

■ Here, Plaintiff seeks to hold Shaver liable for its allegedly negligent failure-to-warn. Where a plaintiff alleges a defendant's negligent failure to warn, the plaintiff must establish the elements for recovery under a negligence theory, namely: duty, breach of that duty, proximate causation, and injury/damage. *Deere & Co. v. Grose*, 586 So.2d 196, 198 (Ala.1991). There is a "duty to warn of those dangers which the user would not be aware of under the particular circumstances of his use of the product." *Reynolds*, 989 F.2d at 471 (quoting *Gurley*, 505 So.2d at 361). Accordingly, Plaintiff must prove that Shaver failed to warn adequately of the dangers associated with the use of the digger/auger and that its failure to do so proximately caused Sims' death. *Id.* Under Alabama law, a negligent failure-to-warn-adequately case should not be submitted to the jury unless there is evidence that an adequate warning would have been read and heeded and would have prevented the accident. *Deere & Co.*, 586 So.2d at 198 (citing *Gurley*, 505 So.2d at 361). Where Plaintiff presents evidence that, had there been a warning concerning the possibility of death, the deceased would have read it and heeded the warning, Defendant is not entitled to summary judgment. *Clarke*, 591 So.2d at 461.

Here, Shaver contends that Plaintiff's negligent failure to warn claim must fail, as the record reveals that a warning sticker and an operations manual were part of the Shaver post hole digger when it was delivered and a warning sticker was in place at the time of the accident. Thus, Shaver argues, there has been no breach of duty to warn. (Def.'s Br. in Supp. at 18.) Further, Shaver argues, had there been a breach, Plaintiff fails to show that such a breach was the proximate cause of Sims' fatal injuries. (*Id.*) Specifically,

Shaver argues that there is no evidence to suggest that Sims would have read and heeded any type of warning. Finally, Shaver argues that there is no duty to warn of a danger that is obvious, such as a rotating auger blade. (*Id.*)

Shaver offers deposition testimony asserting that the Shaver Model 300 post-hole digger at issue here had a warning decal on it when it was sold, and a warning decal was present on the post-hole digger subsequent to Sims' fatal accident. (Parson Dep. at 72–73.) However, the record contains testimony that this warning decal was placed on the PTO drive shaft of the digger, (Parsons Dep. at 72), and the PTO drive shaft in a moving part when the digger is in use. (Parsons Dep. at 84.) Furthermore, Plaintiff offers its expert's affidavit, stating, in relevant part:

12. Owners, operators and users of the Shaver Model 300 post-hole digger would not expect the machine to be as dangerous as it was. Persons that typically operate post-hole diggers would not be expected to appreciate the risk associated with the speed that clothing, fence wire and limbs could be entangled in the rotating components and the risk of serious injuries.

13. [T]he manufacturer should have provided specific instructions regarding the use of the machine near existing wire fences.

16. The warnings provided with the post-hole digger were inadequate. Warnings should have been affixed on the post-hole digger in a location which would be clearly visible. The warnings should identify the hazard of entanglement in the rotating components, state the level of risk, and clearly state the precautions to be taken to avoid the hazard.

17. [T]he failure of the defendant to provide a product which incorporated such ... warnings was a proximate cause of the accident and the plaintiff's fatal injuries.

(Sevart Affidavit ¶¶ 12, 13, 16, 17.)

 Viewing the record in a light most favorable to Plaintiff, the court finds that Plaintiff has established that there is a genuine issue regarding the claim of negligent failure-to-warn. Specifically, the court finds that Plaintiff has established a genuine issue as to whether Shaver had a duty to warn of the dangers of entanglement in the rotating components of the post-hole digger, as Plaintiff's expert contends that such a risk would not be generally appreciated by owners, operators and users of the Shaver Model 300. (Sevart Aff.) Plaintiff further creates an issue as to whether Shaver breached this duty by failing to place a warning, in a clearly visible location, identifying the hazard of the entanglement in the rotating components and the precautions to be taken to avoid the hazard. (Sevart Aff.; Parsons Dep.) Finally, Plaintiff creates a genuine issue as to whether this breach was the proximate cause of the accident resulting in Sims' fatal injuries. (Sevart Aff.) These factual issues are best resolved by the trier of fact. *See Strickland*, 911 F.Supp. at 1471; *Hicks*, 652 So.2d at 217. Thus, Shaver's motion for summary judgment on the ground that Plaintiff has failed to establish a cause of action for negligent failure to warn is due to be denied.

B. *Wanton Failure to Warn*

 Under Alabama law, wanton conduct "is the conscious doing of some act or the omission of some duty (by one who has) knowledge of the existing conditions and (who is) conscious that from the doing of such act or omission of such duty injury will likely or probably result." *Rommell v. Automobile Racing Club of America*, 964 F.2d 1090, 1096 (11th Cir.1992)(quoting *Copeland v. Pike Liberal Arts School*, 553 So.2d 100 (Ala.1989)).[2] "When a person from his knowledge of existing conditions and circumstances is conscious that his conduct will probably result in injury, yet he acts with reckless disregard of the natural or probable

---

**2.** *See also* Alabama Code § 6–11–20(b)(3) (defining "wantonness" as "conduct carried on with a reckless or conscious disregard of the rights and safety of others"); *Berry v. Fife,* 590 So.2d 884 (Ala.1991).

consequences of his act or failure to act, he would be found liable for wantonness." *Id.* (citing *Lee v. Ledsinger*, 577 So.2d 900, 903 (Ala.1991)). In articulating the standard for determining whether the facts of a case supports a finding of wantonness, the Eleventh Circuit, quoting *Yamaha Motor Company, Ltd. v. Thornton*, 579 So.2d 619, 623 (Ala. 1991), stated:

> What constitutes wanton misconduct depends upon the facts presented in each particular case .... In *Lynn Strickland Sales and Service, Inc. v. Aero–Lane Fabricators, Inc.*, 510 So.2d 142 (Ala.1987), the majority of this court made it perfectly clear that wantonness, which requires some degree of conscious culpability, is not to be confused with negligence (i.e., mere inadvertence):
>
>> Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury ... 546 So.2d at 379.

*Rommell*, 964 F.2d at 1096–97. Thus, the primary issue in a claim of wanton conduct, is knowledge. *Id.*

In arguing against summary judgment on the wantonness claim, Plaintiff correctly argues that knowledge need not be shown by direct evidence. *See e.g. Hamme v. CSX Transp., Inc.*, 621 So.2d 281, 283 (Ala. 1993)(in claim for wantonness, knowledge may be proven by circumstantial evidence giving rise to a reasonable inference). However, Plaintiff fails to offer any specific evidence from which the court can draw the inference that Shaver had knowledge that a person such as Sims would be fatally injured by the machinery at issue. Rather, Plaintiff simply contends that "[w]hile there may be no direct evidence that Shaver's conduct was wanton, there are genuine issues of fact for a jury to determine, based upon reasonable inferences, whether Shaver had knowledge that a person such as Mr. Sims operating the post hole digger was probably imperiled by the dangerous and defective machinery which Shaver manufactures and sold in reckless

disregard of the consequences." (Pl.'s Br. in Opp. at 22–23.)

Even viewing the record in a light most favorable to Plaintiff, the court finds that there is no evidence—direct or circumstantial—giving rise to a claim of wantonness on the part of Shaver. While Plaintiff may have established that the risk of serious injury or death from use of the Shaver post hole digger was foreseeable by Shaver, (Sevart Aff.), such a showing of foreseeability—as an element of negligence—can not, alone, give rise to an inference of the element of knowledge necessary to sustain a claim of wantonness. *See Rommell*, 964 F.2d at 1096 (quoting *Yamaha Motor Company*, 579 So.2d at 623). Accordingly, the court finds that summary judgment for Shaver on Plaintiff's claim of wanton failure to warn is due to be granted.

### *ORDER*

For the foregoing reasons, it hereby CONSIDERED and ORDERED that Defendant Shaver Manufacturing Company's Motion for Summary Judgment be and the same is hereby GRANTED and part and DENIED in part. Summary Judgment is GRANTED for Defendant on Plaintiff's claims for breach of express or implied warranties of fitness and suitability and wanton failure to warn. On all other claims, Defendant's Motion for Summary Judgment is DENIED.